# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALVIN VIDRO-OJEDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV238 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Alvin Vidro-Ojeda, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entries 10, 11 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 13, 15; see also Docket Entry 14 (Plaintiff's Memorandum); Docket Entry 16 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of May 19, 2017. (Tr. 211-17.) Upon denial of that application initially (Tr. 83-97, 118-21) and on reconsideration (Tr. 98-117, 165-72), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 125-26). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 40-82.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 11-34.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 208-10, 342-44), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2022.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since May 19, 2017, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: severe arthrosis of the left ankle, status-post fusion; bilateral patella femoral pain syndrome; degenerative disc disease of the lumbar spine; obstructive sleep apnea; insomnia; post-traumatic stress disorder; and adjustment disorder.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

2

the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5.  . . . [Plaintiff] has the residual functional
capacity to perform sedentary work . . . except, he can
occasionally operate foot controls with the left foot.
He can occasionally climb ramps and stairs; never climb
ladders, ropes, or scaffolds; and occasionally balance,
stoop, kneel, crouch, and crawl.  He can occasionally
work around unprotected heights and moving mechanical
parts. He is limited to work environments with a maximum
noise level of "moderate" as defined in the [Selected
Characteristics of Occupations Defined in the Revised
Dictionary of Occupational Titles ("SCO")].  He can
perform simple, routine, and repetitive tasks and make
simple work-related decisions.  He can frequently
interact with supervisors; occasionally interact with
coworkers, but should not perform any tandem or teamwork
type activity; and can never have work related
interaction with the general public, though occasional
superficial contact can be tolerated.

. . .

6.  [Plaintiff] is unable to perform any past relevant
work.

. . .

10.  Considering [Plaintiff]'s age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

11.  [Plaintiff] has not been under a disability, as
defined in the . . . Act, from May 19, 2017, through the
date of this decision.

(Tr. 16-34 (bold font and internal parenthetical citations

omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If

4

there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

5

to last for a continuous period of not less than 12 months,'" id.
(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the
adjudicative process, the Social Security Administration [('SSA')]
has . . . promulgated . . . detailed regulations incorporating
longstanding medical-vocational evaluation policies that take into
account a claimant's age, education, and work experience in
addition to [the claimant's] medical condition." Id. "These
regulations establish a 'sequential evaluation process' to
determine whether a claimant is disabled." Id. (internal citations
omitted).

This sequential evaluation process ("SEP") has up to five
steps: "The claimant (1) must not be engaged in 'substantial
gainful activity,' i.e., currently working; and (2) must have a
'severe' impairment that (3) meets or exceeds the 'listings' of
specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2

_____

[2] The Act "comprises two disability benefits programs. [DIB] . . .
provides benefits to disabled persons who have contributed to the program while
employed. The Supplemental Security Income Program . . . provides benefits to
indigent disabled persons. The statutory definitions and the regulations . . .
for determining disability governing these two programs are, in all aspects
relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal
citations omitted).

6

(4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the

---

[3] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

claimant establishes an inability to return to prior work, the
analysis proceeds to the fifth step, whereupon the ALJ must decide
"whether the claimant is able to perform other work considering
both [the RFC] and [the claimant's] vocational capabilities (age,
education, and past work experience) to adjust to a new job."
Hall, 658 F.2d at 264-65.  If, at this step, the government cannot
carry its "evidentiary burden of proving that [the claimant]
remains able to work other jobs available in the community," the
claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's
finding of no disability on these grounds:

1)  "[t]he ALJ erred by failing to evaluate Listing 1.03"
(Docket Entry 14 at 4 (bold font omitted));

2)  "[t]he ALJ erred in her evaluation of the medical opinion
evidence" (id. at 7 (bold font omitted)); and

3)  "[t]he ALJ erred in her evaluation of Plaintiff's
testimony" (id. at 15 (bold font omitted)).

---

[5] A claimant thus can qualify as disabled via two paths through the SEP.
The first path requires resolution of the questions at steps one, two, and three
in the claimant's favor, whereas, on the second path, the claimant must prevail
at steps one, two, four, and five.  Some short-hand judicial characterizations
of the SEP appear to gloss over the fact that an adverse finding against a
claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993
F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the
process, review does not proceed to the next step.").

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 16 at 5-16.)

### 1. Listing 1.03

Plaintiff's first assignment of error maintains that "[t]he ALJ erred by failing to evaluate Listing 1.03 [('[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint')]." (Docket Entry 14 at 4 (bold font omitted).) According to Plaintiff, "the record contains evidence of all the relevant criteria" of Listing 1.03 (id. at 5), as he "underwent a left ankle fusion surgery with hardware placement (arthrodesis)" on May 19, 2017 (id. (citing Tr. 454, 703-07)), and "the evidence reveals that over a year after his May 2017 left ankle arthrodesis, [he] had not returned to effective ambulation" (id. at 7; see also id. at 6 (describing testimony and other evidence Plaintiff believes supports his inability to ambulate effectively (citing Tr. 52-53, 55-56, 62-64, 67-68, 71, 1174, 1178, 1783, 1799-1803, 1835, 1889, 1893-94))). Plaintiff further points out that, "[w]hile the ALJ found (when assessing Listings 1.02 and 1.04) that [Plaintiff] did not suffer an inability to ambulate effectively because he only used a cane sometimes and this did not limit both of his upper extremities (see [Tr.] 18), the ALJ failed to evaluate [Plaintiff's] 'inability to walk a block at a reasonable pace on rough or uneven surfaces' which is another way that a claimant can

9

meet the criteria of inability to ambulate effectively." (Id. at 7 (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b, and citing Ezzell v. Berryhill, 688 F. App'x 199, 201 (4th Cir. 2017)).)

"Under Step 3, the [SSA's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii) (internal bracketed numbers omitted)). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).

"In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (citing Zebley, 493 U.S. at 530, and 20 C.F.R. 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify."). "An impairment or combination of impairments

10

medically equals a listing when it is <u>at least equal in severity</u> and duration to the criteria of any listed impairment." <u>Grimes v. Colvin</u>, No. 1:14CV891, 2016 WL 1312031, at *4 (M.D.N.C. Mar. 31, 2016) (unpublished) (Osteen, Jr., C.J.) (citing 20 C.F.R. § 416.926(a)-(b)) (emphasis added); <u>see also</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of medical equivalence must be based on <u>medical</u> evidence only." (citing 20 C.F.R. § 404.1529(d)(3)) (emphasis added)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall <u>functional</u> impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." <u>Zebley</u>, 493 U.S. at 531 (emphasis added).

"[O]nly where there is <u>ample</u> evidence in the record to support a determination that a claimant's impairment meets or equals one of the listed impairments must the ALJ identify the relevant listed impairments and compare them to evidence of a plaintiff's symptoms." <u>Reynolds v. Astrue</u>, No. 3:11CV49, 2012 WL 748668, at *4 (W.D.N.C. Mar. 8, 2012) (unpublished) (emphasis added) (citing <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172-73 (4th Cir. 1986)); <u>see also</u> <u>Russell v. Chater</u>, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("<u>Cook</u>, however, does not establish an inflexible rule requiring an

11

exhaustive point-by-point discussion [of listings] in all cases.").[6]

To satisfy the criteria of Listing 1.03, Plaintiff must show that he underwent "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in [§] 1.00B2b, and return to effective ambulation did not occur . . . within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.03. In turn, the regulations define "[i]neffective ambulation" as "an extreme limitation of the ability to walk" and as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities," 20 C.F.R. Pt. 404, Subpt.

---

[6] The Cook court's confinement of the ALJ's duty to explicitly identify listings and compare their elements to the record to situations in which the claimant comes forward with "ample evidence" that an impairment meets a listing makes sense. "Step two of the [SEP] is a threshold question with a de minimis severity requirement," Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)), but "[t]he criteria in the medical listings [at step three] are demanding and stringent," Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994) (internal quotation marks omitted); see also Zebley, 493 U.S. at 532 ("[The Social Security Administration] has set the medical criteria defining the listed impairments at a higher level of severity than the statutory [disability] standard."). Accordingly, the mere fact that an impairment qualifies as severe at step two does not suggest that it meets a listing at step three. No reason thus exists for courts to require ALJs to document the manner in which every impairment deemed severe at step two fails to meet a listing at step three; rather, common sense supports the Fourth Circuit's decision in Cook to insist that ALJs discuss a specific listing only when the claimant marshals "ample evidence" that an impairment actually meets the criteria for that listing. Nor does the more recent ruling in Radford counsel otherwise. Although the Fourth Circuit there remanded due to an ALJ's "insufficient legal analysis" at step three, it did so consistently with the standard set in Cook, as the record contained "probative evidence strongly suggesting that [the claimant] me[t] or equal[ed a particular listing]." Radford, 734 F.3d at 295.

P, App'x 1, § 1.00B2b1 (emphasis added), i.e., "a walker, two crutches or two canes," id., § 1.00B2b2. Other "[e]xamples of ineffective ambulation include, but are not limited to, . . . the inability to walk a block at a reasonable place on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Id. (emphasis added).

Here, as Plaintiff observed (see Docket Entry 14 at 5), the ALJ did not evaluate whether Plaintiff's left ankle impairment met or equaled the criteria of Listing 1.03 (see Tr. 18); however, that omission, if error at all, remains harmless error under the circumstances of this case, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). The ALJ expressly determined that Plaintiff's left ankle condition failed to meet or equal Listings 1.02 and 1.04, because Plaintiff had not shown an inability to ambulate effectively:

> As to degenerative disc disease of the lumbar spine, this impairment, considered singly and in combination with [Plaintiff]'s other impairments, does not meet or equal [L]isting 1.04. Listing l.04 requires "A. evidence of nerve root compression" or "B. spinal arachnoiditis" or

13

"C. lumbar spinal stenosis", resulting in the inability to ambulate effectively. "Inability to ambulate effectively means an extreme limitation of the ability to walk". Consideration was given to *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013) and the [SSA]'s Acquiescence Ruling 15-1(4), with regard to Listing l.04A.

Findings of neurological deficits are required to meet Listing 1.04A, which are not present in this matter, as detailed in the [RFC] discussion. Further, there is no evidence of spinal arachnoiditis in the record with respect to 1.04B. Moreover, <u>the record demonstrates that [Plaintiff] does not have the inability to ambulate effectively</u>, with respect to l.04C, <u>for the reasons detailed in . . . the [RFC] discussion regarding assistive device use. For example, while [Plaintiff] testified that he has been using a cane for the past two years, he also testified that he does not necessarily use it all the time (using it depending on "distance"), and, in any event, listing 1.04 would additionally require "use of a hand-held assistive device(s) that limits the functioning of both upper extremities". Here, a cane only limits the use of one upper extremity, at most.</u> Accordingly, the evidence does not support a finding that [Plaintiff] meets the criteria for Listing 1.04 for spine disorders.

As to severe arthrosis of the left ankle and bilateral knee patella femoral pain syndrome, these impairments, considered singly, in combination, and in combination with [Plaintiff]'s other impairments, do not meet or equal listing 1.02. Here, <u>the record fails to show an "inability to ambulate effectively", for the reasons set forth in the above analysis of listing 1.04</u>. Therefore, listing 1.02 is not met or equaled.

(Tr. 18 (emphasis added) (internal parenthetical citations omitted).) As Listing 1.03 also requires an inability to ambulate effectively, <u>compare</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.03, <u>with</u> <u>id.</u>, §§ 1.02, 1.04, remanding for an express discussion of Listing 1.03 by the ALJ would not result in a different outcome of Plaintiff's claim.

14

Plaintiff challenges the ALJ's underlying finding that Plaintiff had not demonstrated an inability to ambulate effectively, noting that "the evidence reveals that over a year after his May 2017 left ankle arthrodesis, [he] had not returned to effective ambulation." (Docket Entry 14 at 7; see also id. at 6 (describing testimony and other evidence Plaintiff believes supports his inability to ambulate effectively (citing Tr. 52-53, 55-56, 62-64, 67-68, 71, 1174, 1178, 1783, 1799-1803, 1835, 1889, 1893-94))). That argument falls short for three reasons.

First, with regards to Plaintiff's testimony, the ALJ considered Plaintiff's statements that he "ha[d] been using a cane for two years, including when getting out of a chair to stand, but . . . not . . . all the time (use of a cane 'depend[ed] on distance')" (Tr. 21; see also Tr. 52), as well as his assertion that "he could stand and balance without a cane for 3-4 minutes" (Tr. 22; see also Tr. 52-53), but found that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 22). As explained in more detail in the context of Plaintiff's third assignment of error, the ALJ did not err with regard to her assessment of Plaintiff's subjective symptom reporting.

Second, the ALJ's discussion of the medical evidence also supports her conclusion that Plaintiff had not shown an inability

15

to ambulate effectively.  As the above-quoted step three analysis by the ALJ indicates, the ALJ incorporated her assistive device discussion in the RFC analysis into her rationale at step three for finding Plaintiff had not shown an inability to ambulate effectively.  That assistive device discussion, in turn, consisted of the following remarks:

> . . . [A]s to gait and assistive device use in particular, the [ALJ] notes, [Plaintiff] reported regular cane use, occasional walker use, and requiring a scooter to "move about" in the treatment records.  However, the treatment records since the alleged onset date, specifically, the DOD records, note [Plaintiff] only temporarily being on a non-weight-bearing status during which [he] presumably used an assistive device, though one is not specified.  The DOD records note [Plaintiff] being on a non-weight-bearing status in a cast only after his left ankle surgery on May 19, 2017 until a follow-up appointment on June 7, 2017 at which time his provider fitted [Plaintiff] with a short leg walking cast. Shortly thereafter, his provider transitioned [Plaintiff] to a Cam boot on June 28, 2017 with weight-bearing as tolerated, and then, on August 2, 2017, his provider indicated that [Plaintiff] could ambulate with regular shoes and could use the Cam boot as needed going forward, if he so chose.
>
> Moreover, while [Plaintiff] presumably used an assistive device when he was a non-weight bearing status after the May 19, 2017 surgery until the June 7, 2017 appointment, and while [Plaintiff] may currently use a cane at times, the treatment records fail to document any noted assistive device upon exam since the alleged onset date. In fact, the last time that the record documented assistive device use upon exam was in the form of crutches at some exams in 2010, which is approximately seven years prior to the alleged onset date.  The treatment records also otherwise reveal a normal or steady gait or otherwise failed to reveal any noted abnormalities in terms of gait upon exam since the alleged onset date.  In fact, [Plaintiff] testified, while he subjectively requires a cane to stand from a

16

seated position, he also testified that be only uses a cane depending on the distance. This intermittent use is generally consistent with the treatment records failing to regularly document assistive device upon exam since the alleged onset date.

(Tr. 24 (internal parenthetical citations omitted).) That thorough analysis further supports the ALJ's finding that Plaintiff had not shown an inability to ambulate effectively.

Moreover, the evidence on which Plaintiff relies would not have compelled the ALJ to find Plaintiff unable to ambulate effectively. (See Docket Entry 14 at 6 (citing Tr. 1783, 1799-1803, 1835, 1889, 1893-94).) That evidence largely reflects Plaintiff's subjective statements to providers about his left ankle condition (which the ALJ discounted (see Tr. 22)) and lacks objective findings of gait impairment. (See Tr. 1783 (6/6/18 - Plaintiff's report of fewer activities and falls while walking to psychologist during therapy without accompanying physical examination or gait/cane observations), 1801-03 (4/24/19 - routine follow-up appointment with physician assistant documenting Plaintiff's full range of motion, full strength, normal reflexes, and normal neurological findings with no abnormal gait or cane use noted), 1835 (11/8/18 - Plaintiff's statements to psychiatrist that he had "been falling down due to his foot" and that he was "[s]upposed to wear [sic] a cane but [wa]s not using it" without contemporaneous objective findings).)

17

The last remaining record cited by Plaintiff documented his subjective complaint to a VA Compensation and Pension ("C&P") examiner that he could not "walk on uneven surfaces" (Tr. 1889), as well as objective findings of no range of motion (see Tr. 1890) and decreased strength (see Tr. 1893) in the left ankle, but also noted neither gait abnormality nor the presence of a cane at the examination (see Tr. 1889-97), no tenderness (see Tr. 1890), no crepitus (see id.), no atrophy (see Tr. 1893), no instability (see Tr. 1894), and no dislocation (see id.). The examiner further noted that Plaintiff's ankylosis remained in good weight-bearing position (see id.) and opined that "pain, weakness, fatigability or incoordination [would not] significantly limit [Plaintiff's] functional ability with repeated use over a period of time" (Tr. 1892). Ultimately, the examiner concluded that Plaintiff's "ankle condition m[ight] impact [his] ability to perform activity, such as lifting, pushing, pulling, prolonged or repetitive squatting, climbing stairs, walking, or standing." (Tr. 1897 (emphasis added).) As the ALJ already accounted for that equivocal, non-specific opinion by placing limits on all of those activities in the RFC (see Tr. 20-21; see also Tr. 29 (finding opinion "vague" and lacking "specific functional limitations" but noting that Plaintiff "generally having exertional and postural limitations [wa]s consistent with the record"), Plaintiff has not shown that

18

Case 1:20-cv-00238-NCT-LPA   Document 17   Filed 09/03/21   Page 18 of 43

this examination should have compelled the ALJ to find an inability to ambulate effectively.

Third, Plaintiff's contention that "the ALJ failed to evaluate [Plaintiff's] 'inability to walk a block at a reasonable pace on rough or uneven surfaces'" (Docket Entry 14 at 7 (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b, and citing Ezzell, 688 F. App'x at 201)) ultimately misses the mark. In support of that argument, Plaintiff points to his "testi[mony] that he still tripped on uneven surfaces such as bumpy carpet and grass in June of 2019 – over two years after his fusion surgery" (id. (referencing Tr. 62-63)), as well as "notations in the file that he was having trouble with falls and could not walk on uneven surfaces since his fusion surgery" (id. (referencing Tr. 1783, 1835, 1889)).

Although the ALJ did not expressly evaluate whether Plaintiff could walk a block at a reasonable pace on rough or uneven surfaces in his step three analysis (see Tr. 18), remanding on that basis would not result in a more favorable outcome for Plaintiff. Plaintiff's attempt to rely solely on his own testimony and "notations in the file," i.e., his subjective statements to medical providers about falls and difficulty walking, to establish his inability to ambulate effectively (Docket Entry 14 at 7 (referencing Tr. 62-63, 1783, 1835, 1889)) fails for two reasons. First, the determination of whether Plaintiff's impairments caused an inability to ambulate effectively constitutes a medical finding

19

requiring <u>objective</u> medical evidence. <u>See</u> 20 C.F.R. § 404.1525(c)(3); <u>see also</u> <u>Nutt v. Commissioner of Soc. Sec.</u> <u>Admin.</u>, No. 20-CV-11674, 2021 WL 3828590, at *3 (E.D. Mich. Aug. 27, 2021) (unpublished) (rejecting the plaintiff's "assert[ion] that her testimony about . . . difficulty walking on uneven ground" established an inability to ambulate effectively, and holding that the plaintiff "[can]not rely solely on her subjective statements to make her argument"); <u>Bert H. v. Saul</u>, No. 2:20CV4922, 2021 WL 2808692, at *5 (C.D. Cal. July 6, 2021) (unpublished) (holding that "[the p]laintiff's subjective complaints [do not] constitute[] objective medical evidence of an inability to ambulate effectively"); <u>Nguyen v. Berryhill</u>, No. 1:17CV1020, 2018 WL 2018067, at *4 (D.S.D. May 1, 2018) (unpublished) ("[The p]laintiff claims that because she walks slowly, she is unable to walk at a reasonable p[]ace on rough or uneven surfaces . . .[; h]owever, there is no evidence in the record, beyond [the] plaintiff's subjective complaints, to support her claims."); <u>Gambill v. Colvin</u>, No. CIV-15-1271, 2016 WL 7324148, at *4 (W.D. Okla. Nov. 21, 2016) (unpublished) ("[The plaintiff] does not . . . direct the court to _any_ authority holding that a step three finding of presumptive disability can be made on the basis of her self-reports and testimony alone."), <u>recommendation adopted</u>, 2016 WL 7324088 (W.D. Okla. Dec. 15, 2016) (unpublished); <u>Roby v. Colvin</u>, No. 1:14CV164, 2015 WL 13745721, at *5 (W.D. Ky. Nov. 3, 2015) (unpublished)

20

(finding no reversible error arising from ALJ's failure to discuss Listing 1.06 where "[t]he only support for [the plaintiff]'s inability to ambulate effectively [wa]s his own subjective testimony, which without corroborating objective medical evidence, does not establish a substantial question [regarding whether he meets Listing 1.06]" (citing Shavers v. Secretary of Health & Human Servs., 839 F.2d 232, 234 (6th Cir. 1987))), recommendation adopted, 2016 WL 164325 (W.D. Ky. Jan. 13, 2016) (unpublished). Second, as noted above, the ALJ discounted Plaintiff's statements about the intensity and limiting effects of his symptoms (see Tr. 22) and, as detailed below in the context of Plaintiff's third issue on review, the ALJ did not err in that regard.

Plaintiff additionally cites to two Physical Medical Source Statements ("MSS") from Mary Kathryn Newell, PA-C ("PA Newell"), and Chad E. Watts, PA-C ("PA Watts"), who each opined that Plaintiff could walk for less than one block without rest or severe pain (see Docket Entry 14 at 6 (citing Tr. 1174, 1178)). The ALJ, however, found the opinions of PA Newell and PA Watts "not persuasive" because they "failed to support their opinions with an adequate citation to objective findings" and because "the extent of the limitations suggested in th[o]se opinions [wa]s not consistent with the record" (Tr. 29). As discussed in more detail infra in connection with Plaintiff's second assignment of error, the ALJ did not err in discounting those opinions.

21

In sum, Plaintiff's first assignment of error fails as a matter of law.

## 2. Opinion Evidence

In Plaintiff's second issue on review, he faults the ALJ for erring "in her evaluation of the medical opinion evidence." (Docket Entry 14 at 7 (bold font omitted).) In particular, Plaintiff contests the ALJ's decision to discount the persuasiveness of the MSSs from PA Newell and PA Watts as lacking supporting objective findings (id. at 10-11), noting that PA Newell and PA Watts "specifically cited to the conditions diagnosed . . ., treatment undergone . . . and symptoms resulting therefrom . . . which caused [Plaintiff's] work related limitations" (id. at 10 (citing Tr. 1174-79)). Plaintiff additionally asserts that "the record demonstrates, contrary to the ALJ's reasoning, that [Plaintiff] continued to struggle with ankle pain, weakness, limited [range of motion], limited mobility, falls, inability to manage uneven terrain and other difficulties associated with his severe left ankle arthrosis and deformity . . . after his fusion surgery." (Id. at 15.) Plaintiff deems the ALJ's alleged error in that regard "harmful," because the VE testified that an individual "off task more than 10 percent" and "requiring [] hour long breaks" could not "perform[ ] competitive, full time work." (Id. (citing Tr. 77-79).) Those arguments do not warrant reversal or remand.

22

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (<u>see</u> Tr. 211-17)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. <u>See</u> Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. <u>See</u> 20 C.F.R. § 404.1520c(a) (2017) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[7]   Instead, an ALJ must determine and "articulate in [the] . . . decision how <u>persuasive</u> [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record."  20 C.F.R. § 404.1520c(b) (2017) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate

_____

[7] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2) (2017).  Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review."   20 C.F.R. § 404.1513(a)(5) (2017).

how he or she considered those opinions or findings "individually." 20 C.F.R. § 404.1520c(b)(1) (2017).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding. 20 C.F.R. § 404.1520c(b)(2) (2017).[8] The ALJ must only address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. § 404.1520c(c)(3)-(5) (2017) — when the ALJ finds two or more opinions or findings about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3) (2017). The new regulations further deem "inherently neither valuable nor persuasive," 20 C.F.R. § 404.1520b(c) (2017), "[s]tatements on issues reserved to the Commissioner," 20 C.F.R. § 404.1520b(c)(3) (2017), such as statements that a claimant does not qualify as disabled or remains unable to work, 20 C.F.R. § 404.1520b(c)(3)(I) (2017).

---

[8] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(1) (2017). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(2) (2017).

24

On April 25, 2018, PA Newell completed a pre-printed MSS (Tr. 1174-75) on which she indicated that she had treated Plaintiff since February 8, 2018, and opined that Plaintiff's pain in his left ankle, lower back, and right hip limited him to 1) walking half a block without rest or severe pain, 2) sitting for a total of less than two hours in a workday, 3) standing/walking for a total of less than two hours in a workday, and 4) no stooping, bending, crouching, or squatting (see Tr. 1174). In addition, PA Newell believed that Plaintiff needed to lie down frequently (id.), to take "very, very frequent[]" unscheduled breaks of at least one hour in duration (Tr. 1174-75), and to use a cane for imbalance, pain, weakness, and dizziness (Tr. 1175). PA Newell further opined that Plaintiff could not engage in any lifting or carrying, would remain off-task for more than 25 percent of a workday, and would miss work more than four days per month. (Id.)

PA Watts completed the same pre-printed MSS on April 26, 2018 (Tr. 1178-79), and indicated that he had treated Plaintiff for more than three years on a monthly basis (see Tr. 1178). PA Watts diagnosed Plaintiff with lower back pain, left ankle pain, anxiety, depression, and hearing loss which limited Plaintiff to 1) walking less than one block without rest or severe pain, 2) sitting for a total of less than two hours in a workday, 3) standing/walking for a total of less than two hours in a workday, 4) no crouching and squatting, and 5) rare stooping and bending. (See id.) According

25

to PA Watts, Plaintiff needed to shift positions at will (see id.), multiple breaks of 40 to 60 minutes' duration (see Tr. 1178-79), and a cane for imbalance, pain, weakness, and dizziness (see Tr. 1179). PA Watts further opined that Plaintiff could occasionally lift or carry less than 10 pounds, could rarely lift or carry 10 to 20 pounds, would remain off-task for more than 25 percent of a workday, and would miss more than four days of work per month. (See id.)

The ALJ evaluated the persuasiveness of the MSSs from PA Newell and PA Watts as follows:

> . . . [T]hese providers <u>failed to support their opinions with an adequate citation to objective findings</u>. In fact, they simply noted diagnoses, subjective allegations/symptoms, or alleged medication side effects. In other words, these opinions consist of conclusory statements on checkbox-type forms without an adequate citation to objective evidence. Further, <u>the extent of limitations suggested in these opinions is not consistent with the record</u>. In other words, the record fails to reveal that [Plaintiff] is as limited as these opinions suggest. For example, the VA records document exam findings since the alleged onset date of subjective lumbar spinal or foot area tenderness or pain [(Tr. 1086, 1092-93, 1095)], and painful or limited ranges of bilateral knee [(Tr. 1099)] or left ankle motion [(Tr. 1079, 1890, 1962-63)]. These VA records also document exam findings of decreased left ankle strength [(Tr. 1893)], decreased sensation in the left foot [(Tr. 1088)], left ankle ankylosis [(Tr. 1894)], flat feet [(Tr. 1093)], an absent left ankle reflex [(Tr. 1088)], knee crepitus [(Tr. 1099)], and an antalgic gait [(Tr. 1064)]. However, VA exams since the alleged onset date otherwise failed to reveal any noted atrophy, assistive device use, or deficits in terms of motor function, strength, sensation, arm/hand use, or gait [(Tr. 1039-1157, 1755-1972)]. Therefore, in light of the above, these opinions are not persuasive.

26

(Tr. 29 (emphasis added).)  Plaintiff contests both of the ALJ's above-emphasized rationales.  (See Docket Entry 14 at 10-15.)

Plaintiff first challenges the ALJ's rationale that PA Newell and PA Watts "failed to support their opinions with an adequate citation to objective findings" (id.), arguing that they "specifically cited to the conditions diagnosed . . ., treatment undergone . . . and symptoms resulting therefrom . . . which caused [Plaintiff's] work related limitations."  (Docket Entry 14 at 10 (citing Tr. 1174-79).)  In that regard, Plaintiff points out that "PA Newell noted [Plaintiff] would need breaks due to muscle weakness, chronic fatigue, pain and adverse medication side effects amongst other issues" (id. (citing Tr. 1175)), and that "PA Watts noted that [Plaintiff] would [sic] breaks due to his muscle weakness, pain/paresthesias, numbness, chronic fatigue and medication side effects" (id. (citing Tr. 1179)).  According to Plaintiff, "the ALJ then [went] on to admit that those same findings in the treatment record which PA Newell and PA Watts based [Plaintiff]'s limitations upon – weakness, paresthesias, pain, abnormal gait – are in fact present in the record" and "seem[ed] to insinuate that th[o]se findings did not appear over a period of time sufficient enough to support the medical opinions [on the MSSs]."  (Id. at 11 (citing Tr. 29).)  Plaintiff further states that "symptoms can appear intermittently and still be disabling as

27

long as they are occurring frequently enough to prevent the claimant from holding a job for any significant length of time." (Id. (emphasis added) (citing Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986), Brown v. Commissioner Soc. Sec. Admin., 873 F.3d 251, 264 (4th Cir. 2017), and Klaus v. Colvin, No. 1:13CV180, 2016 WL 1435687, at *6 (M.D.N.C. Apr. 11, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. May 31, 2016) (Beaty, Jr., S.J.)).)

Contrary to Plaintiff's arguments (see Docket Entry 14 at 10-11), the record supports the ALJ's determination that PA Newell and PA Watts did not provide adequate citations to objective findings to support their extreme, check-box limitations (see Tr. 29). Although both PAs listed various symptoms, such as weakness, numbness, dizziness, medication side effects, and fatigue, as the basis for the their opinions (see Tr. 1174-75, 1178-79), the record supports the view that they included those symptoms based on Plaintiff's subjective reports, as their records did not document any of those findings objectively on examination (see Tr. 1180-1207, 1878-79).

PA Newell had only treated Plaintiff on two occasions prior to completing the MSS, in February and April 2018. (See Tr. 1180-1207.) At the February visit, Plaintiff complained of right hip pain secondary to his left ankle fusion, and right wrist pain (Tr. 1182), and PA Newell recorded decreased range of motion in

28

Plaintiff's right wrist, and tenderness in the right wrist and right hip, but normal reflexes, sensation, tone, and coordination and documented no lower back or left ankle deficits, gait disturbance, or cane usage (see Tr. 1183-84). In April, Plaintiff complained of right-sided lower back pain (see Tr. 1199), and reported that he had just returned from a visit to Puerto Rico and "need[ed] a paper completed from [PA Newell] outlining his disabilities" (Tr. 1200). On examination, PA Newell noted pain in the right side of Plaintiff's lower back, but found full range of motion and made no other neurological findings regarding Plaintiff's back, hip, or ankle, and did not note gait abnormality or cane use. (See Tr. 1201.) A lumbar spine x-ray taken that day showed decreased lordosis, minimal retrolisthesis at L5-S1, mild facet arthrosis and spondylosis, and maintained disc spaces. (See Tr. 1202.)

Moreover, although PA Watts represented that he had been treating Plaintiff for more than three years on a monthly basis (see Tr. 1178), the record reflects that PA Watts treated Plaintiff only one time, the same day he completed the MSS (see Tr. 1878-79). At that "routine visit" (Tr. 1878), Plaintiff sought treatment for lower back and left ankle pain (see id.), and requested that PA Watts complete "[d]isability forms [] for [his] attempt at [DIB]" (Tr. 1879). On examination, PA Watts noted pain and decreased range of motion in Plaintiff's lower back and left ankle (see Tr.

29

1879), but found Plaintiff in no acute distress (see Tr. 1878), noted no abnormal neurological findings (see id.), did not record gait disturbance or cane usage (see Tr. 1878-79), and merely recommended that Plaintiff continue taking a non-steroidal, anti-inflammatory drug (see Tr. 1879). In light of those largely benign examinations, the ALJ did not err by discounting the persuasiveness of the MSSs, in part, because PA Newell and PA Watts did not cite to adequate objective findings to support their extreme limitations (see Tr. 29.)

As to Plaintiff's argument that the ALJ "admit[ted]" findings existed that supported the opinions expressed in the MSSs (Docket Entry 14 at 11 (citing Tr. 29)), the ALJ did acknowledge that the record contained some findings of decreased strength, sensation, and range of motion in Plaintiff's left ankle and subjective complaints of lower back pain and knee pain (see Tr. 29). That acknowledgment, however, harmonizes with the ALJ's findings that Plaintiff had severe "arthrosis of the left ankle, status-post fusion," "bilateral patella femoral pain syndrome," and "degenerative disc disease of the lumbar spine" (Tr. 17), but that those impairments did not meet or equal any listings (see Tr. 18) or result in disabling functional limitations (see Tr. 20-21).[9]

---

[9] Notably, most of the findings the ALJ acknowledged took place at C&P examinations on July 18, 2017, and February 16, 2018. (See Tr. 29 (citing Tr. 1064, 1079, 1086, 1088, 1092-93, 1095, 1099, 1890, 1893-94).) Thus, those findings occurred in the setting of Plaintiff's attempt to obtain VA disability benefits and do not constitute findings made by physicians in the course of

More significantly, the ALJ then pointed out that "VA exams since the alleged onset date <u>otherwise</u> failed to reveal any noted atrophy, assistive device use, or deficits in terms of motor function, strength, sensation, arm/hand use, or gait." (Tr. 29 (emphasis added) (citing Tr. 1039-1157, 1755-1972).) The record bears out that observation by the ALJ. Plaintiff visited the VA's primary care clinic on four occasions from January 2018 to April 2019, and none of those examinations documented "atrophy, assistive device use, or deficits in terms of motor function, strength, sensation, arm/hand use, or gait" (Tr. 29). (<u>See</u> Tr. 1960-68 (1/3/18 - Sekeya Durgan, NP-C), 1878-79 (4/26/18 - PA Watts), 1844-45 (11/1/18 - Margaret D. Mabie, FNP), 1802-03 (4/24/19 - Rory J. Saliger, PA). Thus, the record does not show that Plaintiff's symptoms "<u>occurr[ed] frequently enough to prevent [him] from holding a job for any significant length of time</u>" (Docket Entry 14 at 11 (emphasis added)).

Plaintiff additionally attacks the ALJ's reasoning that "the extent of limitations suggested in the[ MSSs] is not consistent with the record" (Tr. 29). (<u>Id.</u> at 11-15 (detailing evidence Plaintiff believes holds consistency with the limitations on the MSSs (citing Tr. 445-46, 449, 454, 456-57, 527, 529-30, 533-36, 544-46, 707, 880-81, 883, 929-30, 1038, 1052, 1055, 1059, 1064,

---

treating Plaintiff's musculoskeletal impairments.

31

1079, 1080, 1083-86, 1088-89, 1425-26, 1158-59, 1164, 1169-71, 1783, 1799, 1801-02, 1835, 1878-79, 1889-90, 1893, 1895-97, 2097, 2493, 2268, 2574)).)  In particular, Plaintiff asserts that "the record demonstrates, contrary to the ALJ's reasoning, that [Plaintiff] continued to struggle with ankle pain, weakness, limited [range of motion], limited mobility, falls, inability to manage uneven terrain and other difficulties associated with his severe left ankle arthrosis and deformity . . . after his fusion surgery."  (Id. at 15.)

In pointing to evidence that, according to Plaintiff, bolsters the limitations on the MSSs, he misinterprets this Court's standard of review.  The Court must determine whether the ALJ supported his determination that the restrictions on the MSSs lacked consistency with the record with substantial evidence, defined as "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), and not whether other record evidence weighs against the ALJ's analysis, Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

32

Here, in addition to pointing out that most of the VA records did not support the limitations on the MSSs, the ALJ additionally made the following pertinent findings regarding Plaintiff's back, knee, and foot impairments and their impact on his functional abilities:

- "[A] physical consultative exam in December 2017 revealed . . . only 'mildly' abnormal tandem walking and only 'mild' difficulty with squatting and arising from that position, heel-toe walking on the left and one-leg hopping on the left. In fact, this exam [] revealed that [Plaintiff] was not in acute distress and had [] normal ranges of motion [other than neck extension and his left ankle], normal strength (including bilateral handgrip), and a normal gait, without any noted assistive device use, atrophy, edema, swelling, joint instability, joint laxity, or deformity. This exam also [] revealed intact cranial nerves, symmetrical reflexes, good hand-eye coordination, no balance problems, no muscle spasms, and negative straight leg raise testing. This exam further [] revealed . . . the ability to rise from a sitting position 'without assistance', and the ability to get up and down from the exam table with 'no difficulty'. [Plaintiff] . . . was able to lift, carry, and handle light objects, to pinch, grasp and manipulate small and large objects 'without difficulty', to fully extend his hands, to oppose his fingers, and to make a fist." (Tr. 22-23);

- "[R]ecords since the alleged onset date [] revealed that [Plaintiff] was alert, fully oriented and/or not in any noted acute distress, without any noted assistive device use, atrophy, edema, swelling, joint instability, joint laxity, or deformity. These records also otherwise document exam findings since the alleged onset date of normal ranges of motion (spine, knees, right ankle, all extremities), normal coordination, an intact neuro-vascular status, intact capillary refill, normal coordination, normal strength, intact sensation, and/or no noted motor, sensation,

33

sensory, or arm/hand use abnormalities or deficits." (Tr. 23);

- "[L]eft ankle x-rays after the left ankle surgery on the alleged onset date reveal post-surgical changes, . . . a stable fusion and/or no noted hardware malfunction. Moreover, bilateral knee x-rays in July 2017 revealed no acute osseous abnormalities. Finally, while lumbar spine x-rays in February 2016 revealed degenerative changes at the lower lumbar spine, they also revealed normal alignment and normal vertebral body heights, and a lumbar spine MRI in July 2016 revealed a normal study. Most recently, lumbar spine x-rays in December 2017 merely revealed 'mild' degenerative disc disease and a decreased lordosis, without any noted fracture or herniation[.]" (Tr. 24-25 (internal parenthetical citations omitted)); and

- Plaintiff "reported performing a wide variety of activities, including performing personal care activities, preparing simple meals, driving (albeit with someone with him or only 'once in a while'), and watching television. He also reported shopping in stores, spending time with others, going to sporting events on a regular basis, attending medical/mental health appointments, and going to the mall (albeit 'on good days'). Finally, he also testified, while he subjectively requires a cane to stand from a seated position, his cane use depends on distance. In other words, he admittedly does not necessarily use a cane all the time." (Tr. 27).

Those findings constitute substantial evidence to support the ALJ's determination that the limitations on the MSSs lacked consistency with the record. (See Tr. 29.)

For the above-stated reasons, Plaintiff has failed to show that the ALJ improperly evaluated the MSSs from PA Newell and PA Watts, and Plaintiff's second assignment of error thus falls short.

34

### 3. Subjective Symptom Reporting

Lastly, Plaintiff maintains that "[t]he ALJ erred in her evaluation of Plaintiff's testimony." (Docket Entry 14 at 15 (bold font omitted).) More specifically, Plaintiff faults the ALJ for "assess[ing Plaintiff] with a sedentary RFC finding that he could stand/walk for up to two hours per day and sit for up to six hours per day without any mention of his need to avoid uneven surfaces, his inability to stand for more than three to four minutes at a time without his cane or his need to take breaks to nap for a couple of hours at a time." (Id. at 16 (citing Tr. 20-21).) Plaintiff states that "the ALJ seem[ed] to argue that[,] other than [Plaintiff's] invasive, non-conservative treatments, his treatment was conservative" (id. (citing Tr. 22)), and "then [went] on to list some findings from the record, most of which militate[d] in [Plaintiff]'s favor" (id. (citing Tr. 22-24)). According to Plaintiff, "the ALJ never actually explain[ed] how the findings in the record mean[t] that [Plaintiff wa]s capable of standing more than three to four minutes without his cane, c[ould] work an eight hour workday without breaks due to pain and fatigue and c[ould] walk on uneven surfaces without falling." (Id. (citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)).)

Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25,

2017) ("SSR 16-3p") (consistent with the Commissioner's regulations) adopts a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. § 404.1529. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

36

provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

    1. Daily activities;

    2. The location, duration, frequency, and intensity of pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

    6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

The ALJ here specifically acknowledged Plaintiff's statements that "he could stand and balance without a cane for 3-4 minutes," "[h]is conditions [] affect[ed] his [] walking," and "[h]e ha[d]

37

the medication side effect[] of sleepiness (ha[d] to take [a] nap daily),″ but found such statements "concerning the intensity, persistence, and limiting effects of [his] symptoms not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22; <u>see also</u> Tr. 21 (reporting Plaintiff's testimony that he "nap[ped] 1-3 hours during the day").) As further explicated by the ALJ:

> . . . [T]he extent of [Plaintiff]'s alleged limitations is not entirely consistent with the record. In fact, <u>despite symptoms and alleged medication side effects, other than three ankle surgeries prior to the alleged onset date and one on the alleged onset date, all of which occurred without reported complication, the record reveals an otherwise conservative course of treatment and generally normal, with only minimal, findings since the alleged onset date</u>.
>
> . . .
>
> [W]hile [Plaintiff] presumably used an assistive device when he was a non-weight bearing status after the May 19, 2017 surgery until the June 7, 2017 appointment, and while [Plaintiff] may currently use a cane at times, the <u>treatment records fail to document any noted assistive device upon exam since the alleged onset date</u>. In fact, the last time that the record documented assistive device use upon exam was in the form of crutches at some exams in 2010, which is approximately seven years prior to the alleged onset date. The <u>treatment records also otherwise reveal a normal or steady gait</u> or otherwise failed to reveal any noted abnormalities in terms of gait upon exam since the alleged onset date.
>
> . . .
>
> <u>[Plaintiff] reported performing a wide variety of activities</u>, including performing personal care activities, preparing simple meals, driving (albeit with someone with him or only 'once in a while'), and watching television. He also reported shopping in stores,

38

spending time with others, going to sporting events on a regular basis, attending medical/mental health appointments, and going to the mall (albeit 'on good days'). Finally, he also testified, while he subjectively requires a cane to stand from a seated position, his cane use depends on distance. In other words, he admittedly does not necessarily use a cane all the time.

Simply stated, [Plaintiff]'s actions and admissions reveal that he is not as limited as he alleged from a physical or mental health standpoint. Therefore, taking into consideration [Plaintiff]'s severe and non-severe impairments, course of treatment, subjective allegations, <u>self-reported assistive device use, and alleged medication side effects</u>, this evidence fully supports the assessed [RFC]. It does not support the assessment of different or additional limitations.

(Tr. 22-27 (emphasis added) (internal parenthetical citations omitted).)

Plaintiff's argument that the ALJ assessed the RFC "without any mention of [Plaintiff's] need to avoid uneven surfaces, his inability to stand for more than three to four minutes at a time without his cane or his need to take breaks to nap for a couple of hours at a time" (Docket Entry 14 at 16 (citing Tr. 20-21)) ultimately falls short. The above-emphasized language makes clear that the ALJ did not credit Plaintiff's subjective statement that he could stand for only three to four minutes at a time without his cane (see Tr. 53). (See Tr. 22-27.) Furthermore, although the RFC analysis did not expressly address Plaintiff's alleged inability to walk on uneven surfaces or need to take daily naps, that omission by the ALJ qualifies as harmless error under the facts of this

39

case.  See generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Remand for the ALJ to expressly discuss those matters would not result in a more favorable outcome in Plaintiff's case, as the record does not contain any basis beyond Plaintiff's subjective statements for the ALJ to include such limitations in the RFC.  For example, the record lacks evidence documenting 1) medical treatment for falls of any kind (let alone falls sustained while walking on uneven surfaces), 2) a chronically fatigued appearance, 3) complaints to medical providers of drowsiness or frequent napping, or 4) requests by Plaintiff to change medications or to try alternative remedies due to drowsiness as a medication side effect.  Moreover, no medical sources of record have opined that Plaintiff must avoid uneven surfaces or take naps during the daytime.  (See Tr. 457 (ankle surgeon's statement two and a half months post-fusion releasing Plaintiff to ambulate with regular shoes and to slowly increase his activities and lacking any limitation regarding uneven surfaces), 1084 (C&P exam restricting Plaintiff only from prolonged walking, standing, and stair climbing secondary to Plaintiff's left ankle fusion), 1091 (C&P exam precluding heavy physical duties requiring running, jumping, and heavy lifting/carrying due to lumbar degenerative disc disease), 1097

40

(C&P exam limiting only prolonged running and standing on account of plantar fasciitis), 1105 (C&P exam concluding that Plaintiff's obstructive sleep apnea did not affect his ability to work), 1159 (Plaintiff's statement to consultative psychological examiner that he did not take naps), 1174-75 & 1178-79 (opinions of PA Newell and PA Watts (discounted by the ALJ) that Plaintiff needed frequent, unscheduled breaks during the work day but not indicating that he needed to nap for one to three hours), 1897 (C&P exam finding only that Plaintiff's ankle condition might impact his ability to lift, push, pull, squat repetitively, climb stairs, walk, and stand).

Plaintiff additionally accuses the ALJ of "argu[ing] that[,] other than [Plaintiff's] invasive, non-conservative treatments, his treatment was conservative." (Docket Entry 14 at 16 (citing Tr. 22).) That argument glosses over the ALJ's modifiers, i.e., "the record reveals an otherwise conservative course of treatment . . . since the alleged onset date" (Tr. 22 (emphasis added)). In other words, the ALJ acknowledged that Plaintiff had undergone multiple ankle surgeries up to and including the onset date, but noted, accurately, that Plaintiff's course of treatment after his alleged onset date qualified as conservative. See Shaw v. Kijakazi, No. 1:20CV581, 2021 WL 3079905, at *6 (M.D.N.C. July 21, 2021) (unpublished) (finding no contradiction in ALJ's two observations that the plaintiff's symptoms remained in good control with conservative treatment and that no symptom exacerbation occurred

41

with lack of treatment, because the "statements in question referred to two different times in [the p]laintiff's treatment history, one during which he received mental health treatment, and one in which he did not"), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 23, 2021) (Osteen, J.).

Plaintiff further faults the ALJ for "list[ing] some findings from the record, <u>most</u> of which militate[d] in [Plaintiff]'s favor." (Docket Entry 14 at 16 (emphasis added) (citing Tr. 22-24).) That contention falters because, as discussed above, the ALJ acknowledged that the record contained <u>some</u> findings of decreased strength, sensation, and range of motion in Plaintiff's left ankle and <u>subjective</u> complaints of lower back pain and knee pain (<u>see</u> Tr. 23-24, 29). The ALJ then pointed out, however, that "records since the alleged onset date <u>otherwise</u> revealed that [Plaintiff] was alert, fully oriented and/or not in any noted acute distress, without any noted assistive device use, atrophy, edema, swelling, joint instability, joint laxity, or deformity[ with] . . . normal ranges of motion (spine, knees, right ankle, all extremities), normal coordination, an intact neuro-vascular status, intact capillary refill, normal coordination, normal strength, intact sensation, and/or no noted motor, sensation, sensory, or arm/hand use abnormalities or deficits." (Tr. 23 (emphasis added); <u>see also</u> Tr. 29 ("VA exams since the alleged onset date <u>otherwise</u> failed to reveal any noted atrophy, assistive device use, or deficits in

42

terms of motor function, strength, sensation, arm/hand use, or gait." (emphasis added)).)

Put simply, Plaintiff has not demonstrated reversible error with respect to the ALJ's evaluation of Plaintiff's subjective symptom reporting.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 13) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 3, 2021

43